IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

DANIKA PAIGE MORRIS, and
JOSHUA WAYNE MORRIS, as
Co-Administrators of the Estate of
Daniel Lee Morris, Jr.,

Plaintiffs,

v.                                                          CIVIL ACTION NO. 5:24-CV-24
                                                            Judge Bailey

JUPITER ALUMINUM CORPORATION,
an Illinois Corporation, GEORGE REED,
and MICHAEL FAIR,

Defendants.

## ORDER GRANTING PLAINTIFFS' MOTION TO REMAND

Pending before this Court is plaintiffs' Motion to Remand [Doc. 15] and accompanying Memorandum in Support [Doc. 16], filed March 6, 2024. Jupiter Aluminum Corporation ("Jupiter") filed a Response [Doc. 18] on March 20, 2024. Plaintiffs filed a Reply [Doc. 25] on March 27, 2024. Accordingly, this matter is ripe for adjudication. For the reasons discussed below, the Motion to Remand will be granted.

## BACKGROUND

This case arises out a workplace incident that resulted in the death of Daniel Lee Morris, Jr. Plaintiffs Danika Morris and Joshua Morris are the co-administrators of the estate of Mr. Morris. [Id. at ¶¶ 1, 3, 5]. Mr. Morris worked at Jupiter's aluminum coil coating facility located in Brooke County, West Virginia. [Doc. 1-1 at ¶¶ 6, 21]. As part of his job, Mr. Morris was instructed, directed, and required to operate the coil slitter, which

1

is used to cut aluminum coils into smaller width coils, and responsible for inspecting the coils being rewound on the rewind mandrel for burrs caused by the cutting of the aluminum.  [Id. at ¶ 23].

On July 26, 2022, plaintiffs allege that Mr. Morris was directed to operate the coil slitter to cut a 36-inch-wide coil into three 12-inch coils.  [Id. at ¶ 28].  As the coil slitter was in operation, Mr. Morris entered a unguarded area of the slitter take-up roll, known as the rewind mandrel, and placed his hand on the coil strip that was traveling at a high speed. [Id. at ¶ 29].  This caused Mr. Morris' right hand to be pulled into the in-running nip point hazard created between the coil strip and the rewind mandrel and his entire body was pulled into the rewind mandrel.  [Id. at ¶ 30].  Mr. Morris was removed from the coil slitter by co-workers and transported to Wheeling Hospital, where he was pronounced dead.  [Id. at ¶¶ 31–32].  On the date of the incident, plaintiffs allege that defendant Reed was the Plant Manager at Jupiter's aluminum coating facility located in Brooke County, West Virginia, and Defendant Fair was the decedent's direct supervisor.  [Id. at ¶¶ 8–9].

On January 4, 2024, plaintiffs filed a Complaint in the Circuit Court of Brooke County, West Virginia, naming Jupiter, George Reed, and Michael Fair as defendants. *See* [Doc. 1-1].  The Complaint asserted a single cause of action for five-factor deliberate intent pursuant to West Virginia Code § 23-4-2(d)(2)(B).  *See* [id. at ¶¶ 34–48].  Danika Morris is a resident of Hancock County, West Virginia, and Joshua Morris is a resident of Brooke County, West Virginia. [Doc. 1-1 at ¶¶ 1, 3].  Jupiter is a Illinois corporation with its principal place of business in Des Plaines, Illinois.  [Id. at ¶ 7].  Mr. Reed is a resident of Jefferson County, Ohio.  [Id. at ¶ 8].  Mr. Fair is a resident of West Virginia.  [Id. at ¶ 9].

On February 8, 2024, Jupiter filed a Notice of Removal in this Court, alleging diversity jurisdiction.  *See* [Doc. 1].  Mr. Reed and Mr. Fair did not join in or consent to removal.[1]  *See* [id.].  On March 6, 2024, plaintiffs filed a First Amended Complaint alleging an additional cause of action for heightened deliberate intent pursuant to West Virginia Code § 23-4-2(d)(2)(A).  *See* [Doc. 14].  On the same day, plaintiffs moved to remand this case to the Circuit Court of Brooke County, West Virginia.  *See* [Doc. 15].  Plaintiffs argue that this Court lacks jurisdiction over this matter because the citizenship of the parties is not diverse.  *See* [Docs. 15 & 16].  Specifically, plaintiffs argue that the Amended Complaint asserts a viable cause of action against all defendants, including Mr. Fair, and because Mr. Fair is a citizen of West Virginia, as are plaintiffs, the parties are not diverse.  [Doc. 16 at 4–6].  Moreover, plaintiffs argue that this case is not removable because Fair is a citizen of the state where this case was brought.  [Id. at 6].

In response, Jupiter argues that removal jurisdiction is based on the operative complaint at the time the case was removed.  [Doc. 18 at 4–6].  Based on this, Jupiter argues that the original complaint did not assert a viable cause of action against Mr. Fair and Mr. Reed, and therefore, defendant Reed and Fair were fraudulently joined in this

---

[1]Jupiter argues that Mr. Reed and Mr. Fair were not required to join in, or consent to removal as Mr. Reed and Mr. Fair were fraudulently joined in this matter. [Doc. 1 at ¶ 45].  On the other hand, plaintiffs believe that Mr. Reed and Mr. Fair were not fraudulently joined in this matter because the First Amended Complaint asserts a viable claim against them.  [Doc. 16 at 7].  Thus, plaintiffs argue that removal of this action was defective because Mr. Reed and Mr. Fair did not join in, or consent to the removal.  *See* [Doc. 16 at 7].  As discussed below, Mr. Reed and Mr. Fair were fraudulently joined and fraudulently joined defendants are not required to join in or consent to a co-defendant's notice of removal.  *Shaffer v. Northwestern Mut. Life. Ins. Co.*, 394 F.Supp.2d 814, 819 (N.D. W.Va. 2005) (Stamp, J.) (citing *Fleming v. United Teacher Assocs. Ins. Co.*, 25-F.Supp.2d 658, 663 (S.D. W.Va. 2003) (Faber, C.J.)).

3

case.  Thus, defendant Fair's citizenship is not considered and complete diversity exists between plaintiffs and Jupiter and this Court has jurisdiction over this matter.  [Doc. 18 at 4–6].

In their reply, plaintiffs note that removal of the case based on the original complaint "may have arguably been proper," however, plaintiffs' First Amended Complaint divested this Court of subject matter jurisdiction.  [Doc. 25 at 1–2].  In support, plaintiffs argue that defendant Fair was not named as a defendant to defeat federal jurisdiction, plaintiffs were not dilatory in amending their complaint, and plaintiffs will be significantly prejudiced if defendant Fair is dismissed from this matter.  [Id. at 5–8].

## LEGAL STANDARDS

### A.   Fraudulent Joinder

When an action is removed from state court, a federal district court must determine whether it has original jurisdiction over the plaintiff's claims.  ***Kokkonen v. Guardian Life Ins. Co. of Am.***, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).  "Federal courts are courts of limited jurisdiction.  They possess only that power authorized by the Constitution and statue, which is not to be expanded by judicial decree."  ***Id.***

Federal courts have original jurisdiction primarily over two types of cases, (1) those involving federal questions under 28 U.S.C. § 1331, and (2) those involving diversity of citizenship under 28 U.S.C. § 1332.  When a party seeks to remove a case based on diversity of citizenship under 28 U.S.C. § 1332, that party bears the burden of establishing "the amount in controversy exceeds the sum or value of $ 75,000, exclusive of interests and costs, and is between citizens of different states."  28 U.S.C. § 1332.  Courts should

4

resolve any doubt "about the propriety of removal in favor of retained state court jurisdiction." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232–33 (4th Cir. 1993).

The doctrine of fraudulent joinder is a narrow exception to the complete diversity requirement. *Jackson v. Allstate Ins. Co.*, 132 F.Supp.2d 432, 433 (N.D. W.Va. 2000) (Broadwater, J.). If the doctrine applies, the Court can exercise removal jurisdiction even though a non-diverse party is a defendant. *Id.* (citing *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)). The Court can disregard the citizenship of and dismiss the non-diverse defendant, thereby retaining jurisdiction over the case. *Mayes*, 198 F.3d at 461.

The removing party bears the "heavy burden of showing that there is no possibility of establishing a cause of action against [a] non-diverse party" by clear and convincing evidence. *Jackson*, 132 F.Supp.2d at 433 (citing *Hartley v. CSX Transp. Inc.*, 187 F.3d 422, 424 (4th Cir. 1999)); *Clutter v. Consolidation Coal Co.*, 2014 WL 1479199, at *4 (N.D. W.Va. Apr. 15, 2014) (Stamp, J.). In the alternative, the removing party can establish that "there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Pritt v. Republican Nat. Committee*, 1 F.Supp.2d 590, 592 (S.D. W.Va. 1998) (Haden, C.J.). "[F]raudulent joinder claims are subject to a rather black-and-white analysis in this circuit. Any shades of gray are resolved in favor of remand." *Adkins v. Consolidation Coal Co.*, 856 F.Supp.2d 817, 820 (S.D. W.Va. 2012) (Copenhaver, J.).

The Court must resolve all issues of fact and law in plaintiff's favor, but, in doing so, "is not bound by the allegations of the pleadings." *Marshall*, 6 F.3d at 232–33; *AIDS Counseling and Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990). Instead, the Court can consider "the entire record, and determine the basis of

joiner by any means available." *AIDS Counseling and Testing Centers*, 903 F.2d at 1004 (quoting *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964)). The standard for fraudulent joinder is more favorable to the plaintiff than the standard for a Rule 12(b)(6) motion to dismiss. *Mayes*, 198 F.3d at 464.

Significantly, when ruling on a motion to remand based on fraudulent joinder, the Court cannot consider post-removal filings "to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999). A plaintiff cannot "'re-plead the complaint [after removal] in an attempt to divest this court of jurisdiction by hindsight.'" *McCoy v. Norfolk Southern Ry. Co.*, 858 F.Supp.2d 639, 642 n1 (S.D. W.Va. 2012) (Copenhaver, J.) (quoting *Justice v. Branch Banking & Trust Co.*, 2009 WL 853993 at *7 (S.D. W.Va. Mar. 24, 2009) (Copenhaver, J.)). The Court must determine removal jurisdiction "on the basis of the state court complaint at the time of removal, and . . . a plaintiff cannot defeat removal by amending it." *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 265 (5th Cir. 1995). Nonetheless, "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

## B.    Deliberate Intention

The West Virginia Worker's Compensation Act generally provides broad immunity to qualifying employers against employee's tort actions. *See* W.Va. Code § 23-2-6. However, the workers' compensation statute provides an exception to that immunity if "the employer or person against whom liability is asserted acted with 'deliberate intention[.]'"

W.Va. Code § 23-4-2(d)(2).  The workers' compensation statute allows for two types of deliberate intent claims: (1) heightened deliberate intent claims under West Virginia Code § 23-4-2(d)(2)(A), and (2) five-factor deliberate intent claims under West Virginia Code § 23-4-2(d)(2)(B).  Employees covered by workers' compensation may sue covered co-employees for § 23-4-2(d)(2)(A) **heightened deliberate intent claims but not** § 23-4-2(d)(2)(B) five-factor deliberate intent claims.  *Edwards v. Stark*, 247 W.Va. 415, 880 S.E.2d 881, 887 (2022) (citing *Young v. Apogee Coal Co. LLC*, 232 W.Va. 554, 753 S.E.2d 52, 52 (2013)).

Under West Virginia Code § 23-4-2(d)(2)(A), an employee can satisfy the requirements by proving "that the employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee."  The employee must show an actual, specific intent and may not be satisfied by allegation or proof of: (i) conduct which produces a result that was not specifically intended; (ii) conduct which constitutes negligence, no matter how gross or aggravated; or (iii) willful, wanton or reckless misconduct. *Id.*

To properly plead a *prima facie* case under West Virginia Code § 23-4-2(d)(2)(A), the employee must allege that "an employer 'acted with a consciously, subjectively and deliberately formed intention to produce a specific result of injury.'" *Tolliver v. Kroger Co.*, 201 W.Va. 509, 498 S.E.2d 702, 715 (1997).  "'Neither negligence, recklessness nor wilful misconduct satisfies the requirements of this subsection–instead, . . . a plaintiff must prove that a . . . person granted immunity actually tried to injure or kill him." *Williams v. Harsco*

*Corp.*, 2011 WL 3035272, at *2 (N.D. W.Va. July 22, 2011) (Keeley, J.) (quoting Syl. Pts. 7–9, *Tolliver*, 498 S.E.2d at 702).

 Under West Virginia Code § 23-4-2(d)(2)(B), an employee can recover damages from an employer by proving the following five elements:

 (i) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

 (ii) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition[;]

 ....

 (iii) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer[;]

 ....

 (iv) That notwithstanding the existence of the facts set forth in subparagraphs (i) through (iii), inclusive, of this paragraph, the person or persons alleged to have actual knowledge under subparagraph (ii) nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and

 (v) That the employee exposed suffered serious compensable injury or

compensable death as defined in section one, article four, chapter twenty-three as a direct and proximate result of the specific unsafe working condition.

W. Va. Code§ 23-4-2(d)(2)(B)(i)–(v).

## DISCUSSION

Under the motion to remand standard, the Court must consider the operative complaint at the time of removal. *See Dotson v. Elite Oil Field Serv. Inc.*, 91 F.Supp.3d 865, 873 (2015) (Keeley, J.). Moreover, "the Court cannot consider post-removal filings 'to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court.'" *Id.* (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999)). In this case, the operative complaint at the time of removal was the original Complaint. Plaintiffs' original Complaint alleges a single cause of action for five-factor deliberate intent under West Virginia Code § 23-4-2(d)(2)(B) against defendants Jupiter, Reed, and Fair. *See* [Doc. 1-1]. However, five-factor intent claims under West Virginia Code § 23-4-2(d)(2)(B) may only be brought against an employer. *Dotson*, 91 F.Supp.3d at 871 (citing *Young v. Apogee Coal Co., LLC*, 232 W.Va. 554, 753 S.E.2d 52, 52 (2013)). A non-employer person, such as a supervisor or a coworker, may not be made a defendant in a cause of action under West Virginia Code § 23-4-2(d)(2)(B). *Id.* (citing *Young*, 753 S.E.2d at 54). Thus, because defendants Reed and Fair were the decedent's supervisors, they were fraudulently joined in this matter. *See* [Doc. 1-1 at ¶¶ 8–9].

However, plaintiffs' amended complaint asserts an additional cause of action against

9

Jupiter, Reed, and Fair under West Virginia Code § 23-4-2(d)(2)(A). *See* [Doc. 14]. West Virginia Code § 23-4-2(d)(2)(A) permits suits against non-employers. ***Edwards v. Stark***, 247 W.Va. 415, 880 S.E.2d 881, 885 (2022). Thus, this Court must now consider what to do when plaintiffs file an amended complaint as of right including claims against a pre-existing, non-diverse defendant that are sufficient to defeat diversity jurisdiction.

Pursuant to 28 U.S.C. § 1447(e), when a party seeks to amend its complaint to add a non-diverse defendant, the court may either allow joinder of additional defendants who destroy subject matter jurisdiction, and remand the case, or deny joinder of a non-diverse defendant. Thus, this Court has two options—it can either allow plaintiffs to join defendant Reed and Fair, which would destroy diversity jurisdiction due to Fair's West Virginia citizenship, and remand the matter to the Circuit Court of Brooke County, West Virginia, or it can deny joinder of defendant Fair. The district court has discretion as to "the actual decision on whether or not to permit joinder of a defendant under these circumstance." ***Mayes***, 198 F.3d 462; *see also* 28 U.S.C. § 1447(e). A district court has the authority to reject a post-removal joinder that implicates § 1447(e) even where, as here, the joinder was without leave of court. ***Mayes***, 198 F.3d 462 n.11.

In deciding whether an amended complaint to join non-diverse defendants after removal to federal court under diversity jurisdiction is proper, the court considers all relevant factors in the case. ***Id.*** at 462. Specifically, the court looks to "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." ***Id.*** (quoting

*Gum v. General Electric Co.*, 5 F.Supp.2d 412, 415 n.8 (S.D. W.Va. 1998) (Haden, C.J.)).

A district court is correct to carefully scrutinize an "attempt to add a non-diverse defendant after removal," particularly when the "plaintiff seeks to add a non-diverse defendant immediately after removal but before any additional discovery has taken place." *Id.* at 463. In those situations, "district courts should be wary that the amendment sought is for the specific purpose of avoiding federal jurisdiction." *Id.*

The Court will first determine whether the purpose the First Amended Complaint, which purports to add a viable claim against defendant Fair and Reed, is to defeat federal jurisdiction. The addition of defendant Reed in this matter does not destroy diversity jurisdiction, however, the addition of defendant Fair does as he is a citizen of the same state as the plaintiffs.

Considering all the pleadings and briefing, this Court finds the amended complaint was submitted primarily for the purpose of defeating federal jurisdiction. *See Dotson*, 91 F.Supp.3d at 875–876 (citing *Gum*, 5 F.Supp.2d at 414) (finding that the amended complaint was submitted to avoid federal jurisdiction, and noting as significant that the amendments were filed soon after this case was removed, and before significant discovery occurred).

Plaintiffs provide a number of arguments in an attempt to persuade this Court that their Amended Complaint was not filed for the purpose of defeating federal jurisdiction. For example, plaintiffs contend that defendant Fair was named as a defendant due to his actions. [Doc. 25 at 5–6]. Further, plaintiffs argue that if their amendment was merely done to defeat federal jurisdiction, they would not have also named defendant Reed, a

diverse party in the matter.  [Id. at 6].  The First Amended Complaint asserts a cause of action for heightened deliberate intent pursuant to West Virginia Code § 23-4-2(d)(2)(A). *See* [Doc. 14].  Moreover, plaintiffs argue that the claims against defendant Reed and Fair were not based on their residency but were based on their "discernable knowledge and intent to cause harm to the deceased."  [Doc. 25 at 6].  However, based on the pleadings, it is obvious plaintiffs knew of the facts surrounding their heightened deliberate intent claim at the time they filed their original Complaint.  Yet, plaintiffs waited 27 days after this case was removed to amend their complaint to add a viable cause of action against defendants Reed and Fair.  Also suspect is the fact that plaintiffs amended their complaint and almost immediately filed a Motion for Remand.  Thus, this factor weighs in favor of Jupiter.

The second factor, whether the plaintiffs were dilatory in asking for amendment, weighs in favor of the plaintiffs.  In ***Wurts v. Branch Banking and Trust Company***, 2019 WL 4010290 (S.D. W.Va. Aug. 23, 2019), Judge Goodwin found that the plaintiff was not dilatory in filing an amended complaint because the plaintiff filed it within the 21 day time period permitted by Federal Rule of Civil Procedure 15(a)(1).  ***Wurts***, 2019 WL 4010290, at *2.  Similarly in this case, plaintiffs in this matter were not dilatory as they filed their First Amended Complaint within the 21 day time period.  Jupiter filed an Answer on February 22, 2024.  *See* [Doc. 1 & Doc. 9].  Plaintiffs filed their First Amended Complaint as of right on March 6, 2024.  *See* [Doc. 14].  Accordingly, this factor weighs in favor of plaintiffs.

Finally, this Court turns to the third factor, whether plaintiffs would be significantly injured if the amendment is not allowed.  Plaintiffs First Amended Complaint asserts an additional cause of action for heightened deliberate intent.  This claim was not included in

the original Complaint.  If this Court were to dismiss defendant Fair from this matter, plaintiffs argue that they will be significantly prejudiced as they will be required to maintain two separate lawsuits with risks of inconsistent verdicts.  Moreover, plaintiffs note that defendant Reed is a diverse party and thus if the heightened deliberate claims against defendant Reed proceeds in federal court, plaintiffs will be litigating the same claims against one supervisor in federal court and the other supervisor in state court.  Based on this, this Court finds that the third factor weighs in favor of plaintiffs.

"The district court, with input from the parties, should balance the equities in deciding whether the plaintiff should be permitted to join a nondiverse defendant." *Mayes*, 198 F.3d at 463.  Although this Court believe that plaintiffs likley filed their Amended Complaint for the purpose of defeating federal jurisdiction, the other factors weigh in favor of plaintiff.  In balancing the equities between plaintiffs and the defendant, this Court finds that joinder of defendants Reed and Fair is proper.  Thus, this Court finds that remand is appropriate in this matter.

## CONCLUSION

For the reasons discussed above, plaintiffs' Motion to Remand [**Doc. 15**] is **GRANTED**.  Defendants Jupiter Aluminum Corporation and Michael Fair's Partial Motion to Dismiss Plaintiffs' First Amended Complaint [**Doc. 19**], Defendants Jupiter Aluminum Corporation and Michael Fair's Memorandum of Law in Support of Partial Motion to Dismiss Plaintiffs' First Amended Complaint [**Doc. 20**], and Defendant George Reed's Motion to Dismiss Plaintiffs' First Amended Complaint [**Doc. 22**] are hereby **DENIED AS**

**MOOT**.  The above-styled case is hereby **REMANDED** to the Circuit Court of Brooke County, West Virginia.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein as well as to the Circuit Court of Brooke County, West Virginia.

**DATED:** April 1, 2024.


**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**

14